# Hahn v. St. Luke's Hospital

C.P. of Lehigh County, no. 1999-C-1375V.

*Susan L. Luckenbill* and *Stephen D. Rhoades,* for plaintiff.
*Paul E. Laughlin,* for defendant.

FORD, *J.,* May 2, 2002—This is a medical malpractice case wherein the jury ruled in favor of the defendant hospital. We denied post-trial motions. A timely appeal to the Superior Court followed. Because of the appeal, we file this opinion to explain the reasons for denial of the post-trial motions.

A significant trial ruling was made which permitted the defense to introduce evidence that the plaintiff, Anthony Granata, was declared disabled by the Social Security Administration prior to the alleged injury in this case, and that Mr. Granata was eligible for Social Security benefits as a result of that declaration of incapacity. Our ruling on this issue was the crux of the post-trial motions and is the crux of the appeal to the Superior Court.

## PROCEDURAL AND FACTUAL HISTORY

Suit was brought by Dorothy Hahn on behalf of Anthony Granata. Dorothy Hahn is the guardian of the estate and person of Anthony Granata. She is also his sister.

Anthony Granata is mentally retarded with Down's syndrome. He was admitted to the defendant hospital on September 22, 1997, with a critical, unrelated, left subdural hematoma. He was successfully treated for the presenting problem. However, the plaintiff's evidence showed that hospital personnel accidentally left a tourniquet on Mr. Granata's arm which caused permanent injury to the arm and other permanent injuries about the body. Plaintiff presented evidence that Mr. Granata was permanently disabled from working as a result of the tourniquet injuries.

A number of months after Mr. Granata's hospital stay, his guardian applied on his behalf for Social Security benefits. He was granted benefits, effective September 1, 1997, a date which was several weeks before the tourniquet incident. The Social Security Administration found Mr. Granata disabled, not as a result of the injury to the arm, but rather because of his mental condition.

The jury trial was conducted from May 30, 2001 to June 6, 2001. In response to interrogatories, the jury found that, although the hospital was negligent, the negligence was not a substantial factor in bringing about plaintiff's injuries. The court entered a molded verdict in favor of the defendant and against the plaintiff.

The first witness for the plaintiff at trial was Dorothy Hahn. We initially ruled that defense counsel could not inquire of her about the finding of disability made by the Social Security Administration. However, after reflection, we believed our ruling to be in error. Accordingly, we reversed it sua sponte. This resulted in Ms. Hahn's being recalled to the stand and, in response to defense questions, acknowledging the finding of disability by the

Social Security Administration, effective a few weeks before the allegedly disabling tourniquet injury. As correctly noted by plaintiff's counsel in the brief in support of the post-trial motions, the disability found by the Social Security Administration was used by defense counsel to discredit the testimony of plaintiff's economic expert, Mr. Andrew Verzilli.

The plaintiff argued that our ruling permitting the admission into evidence of the Social Security Administration's finding of disability was error. Plaintiff claimed that the mistake was compounded by the judge's instruction that was given on the issue of disability. We quote from the portion of the charge that addressed this issue.

"As I told you earlier, if you find that one of the defendant's nurses was negligent in regard to a tourniquet, this issue of disability must then be decided by you. In deciding if the plaintiff is disabled due to the incidents alleged here with the tourniquet, consider all of the evidence that was admitted for your determination." (The court then listed the people who testified on the issue of disability.)

"On this same issue about past earnings, future earnings, you heard that the plaintiff applied for Social Security disability benefits in 1998, and was found disabled from work by the Social Security Administration effective a few days before the alleged tourniquet incident. And was found disabled due to conditions not related to the tourniquet incident, and has been receiving money benefits. You may also consider these factors in deciding if plaintiff suffered any compensable disability from the alleged tourniquet incident.

"Ladies and gentlemen, the plaintiff is entitled to be compensated for the amount of earnings that he has lost up to the time of trial, as a result of his injuries resulting from a tourniquet incident. This amount is the difference between what he probably could have earned but for the harm, and any less sum which he actually earned in any employment. However, I think the evidence was there have been no earnings since the time of the alleged tourniquet incident. And again, you heard the evidence pertaining to disability from Social Security, as far as payments." (The court continued to provide further instruction in regard to determination of disability without further mention of Social Security.) 6/6/01 N.T., pp. 89-91.

A reading of the entire charge, in regard to disability, past earnings and future earnings, is suggested.

Post-trial motions for judgment n.o.v. and for new trial, were timely filed on June 18, 2001. The motions were briefed and argued. We denied the motions with our order which was signed on December 17, 2001, and filed on December 18, 2001. A timely notice of appeal to the Superior Court was filed on January 17, 2002.

In the section which follows, we make mention of other facts pertaining to the Social Security issue, and we address the testimony of Nancy Kent which was a secondary issue raised by the plaintiff in her post-trial motions.

## DISCUSSION

In her opening statement, the attorney for the plaintiff argued that, had Anthony Granata not become injured at St. Luke's Hospital as a result of the tourniquet incident, he would have continued working as long as he could.

The plaintiff's plan was to have the jury hear about only one incident that could have caused disability in Anthony Granata, namely, the tourniquet event of September 26, 1997.

However, there were other conditions that accounted for disability in Mr. Granata, namely, his cognitive deficits. We permitted the jury to hear these other conditions in Mr. Granata which were directly relevant to the disability claimed by the plaintiff. Mr. Granata applied for Social Security benefits through his guardian. He was granted those benefits, effective September 1, 1997, a date only several weeks before the tourniquet incident. The Social Security Administration found Mr. Granata disabled, not as a result of the injury to the arm, but rather because of his mental condition.

Plaintiff's counsel argued that the evidence about the Social Security determination was irrelevant and inadmissible under the collateral source rule. Defense counsel argued that the evidence was relevant, was directly contrary to the assertion made by plaintiff and was not prohibited collateral source information. Despite an initial ruling to the contrary, we determined that defense counsel was accurate and that a full and truthful airing of all of the factors on the issue of disability required the introduction of the Social Security determination.

The court still left the determination of disability to the jury and made it clear to the jury, from the instruction quoted above, that the determination by the Social Security Administration of disability, accepted by the plaintiff, was one of many factors under the evidence that it must consider in evaluating the claim of disability stated by the plaintiff.

As stated, plaintiff argued that our ruling was made in violation of the collateral source rule. Under this rule, payments from a collateral source shall not diminish the damages otherwise recoverable from a wrongdoer. The rationale of the rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be released of responsibility for the wrong. *Moorhead v. Crozer Chester Medical Center,* 705 A.2d 452, 455 (Pa. Super. 1997), *alloc. granted,* 557 Pa. 630, 732 A.2d 616 (1998).

Implicit in the collateral source rule is that there is only one injury involved, although there may be multiple sources of funds to compensate a given plaintiff for the injury. As properly noted by defense counsel in his brief, "the evidence concerning Mr. Granata's Social Security disability determination was not introduced to reduce damages attributable to his arm, but rather to rebut plaintiff's contention that his inability to work was attributable . . ." to the arm incident only. Thus, this is not a collateral source issue at all.

Plaintiff cites a variety of cases on collateral source and related principles but none is directly applicable to the issue we have before us. Here, unlike in those cases, plaintiff took advantage of a source of funds for a disabling condition which pre-dated the allegedly disabling tourniquet event.

Plaintiff wanted to restrict the jury to an incomplete and misleading view of Mr. Granata's alleged disability. We opted to allow the complete view so the jury could make an informed determination. There was no legal bar to our doing that and fairness to both sides required our allowing this relevant information.

The only other issue raised in the post-trial motions which was briefed pertained to the court's permitting Nancy Kent to testify for the defense over objection. The challenge to the court's ruling in this regard is without merit.

Nancy Kent worked for an organization called Human Resources Center. In 1997, it was retained by J.C. Penney's, then Anthony Granata's employer, to evaluate Mr. Granata and to generally assist him in the performance of his functions at J.C. Penney's. Ms. Kent was specifically assigned to work with Mr. Granata.

One of the documents prepared by Ms. Kent when she did this work on behalf of J.C. Penney's was exhibit D-5. This contained her commentary about Mr. Granata and the performance of his work. D-5 was unsigned but it is uncontroverted that it was prepared by Ms. Kent.

The only point to the testimony of Nancy Kent was to authenticate exhibit D-5. Defense counsel then moved its admission as a business record. We admitted the document over objection.

As the exchange between the attorneys before Ms. Kent's testimony demonstrates, defense counsel believed he had an authenticity stipulation for exhibit D-5 in that it was part of the J.C. Penney documents, as to which there was an authenticity stipulation for the remainder of those documents. When he was told there was no stipulation for D-5 (apparently because it was unsigned), defense counsel conducted an investigation to determine who prepared the document and discovered Ms. Kent. This was on the eve of trial. Ms. Kent was not identified as a witness for the defense in pretrial submissions.

The only objection by the defense to the calling of Ms. Kent was one of surprise, because she was not listed in pretrial submissions. We evaluated the claim of surprise and rejected it in view of the fact that plaintiff's counsel was in possession of exhibit D-5 well in advance of trial and apparently had the document for as long as the defense counsel.

In view of the misunderstanding pertaining to the stipulation and in view of the fact that Ms. Kent did no more than authenticate the document and read certain portions of it, the trial court acted within its authorized discretion in permitting the witness to testify. The trial judge has broad powers concerning the conduct of the trial, especially in regard to admission of evidence. The trial judge must exercise his discretion soundly and will only be reversed where there is a clear abuse of discretion. *Santarlas v. Leaseway Motorcar Transport Co.,* 456 Pa. Super. 34, 40, 689 A.2d 311, 313 (1997).

We note that the plaintiff raised a weight of the evidence argument in the post-trial motion. The motion itself does not specify in what fashion the evidence was deficient. Additionally, the brief that was filed in support of the post-trial motion did not address the weight of the evidence issue. As to this argument, the plaintiff has not complied with Pa.R.C.P. 227.1(b)(2) in that the motion does not specify the basis for relief. Plaintiff has also not complied with Leh.R.C.P. 227.1(b) and (c) in regard to briefing. Accordingly, the weight of the evidence argument is waived.

For the reasons specified herein, we properly denied the post-trial motions.

## ORDER

Now, May 2, 2002, it is hereby ordered that the clerk of courts, civil division, immediately send the record of this case to the Superior Court of Pennsylvania.